UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| AUSTON KNIGHT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>Plaintiff,<br><br>vs.<br><br>DAKOTA 2000 INC.,<br><br>Defendant. | 3:21-CV-03025-RAL<br><br>OPINION AND ORDER GRANTING IN PART MOTION TO CONDITIONALLY CERTIFY FLSA COLLECTIVE ACTION |

The Fair Labor Standards Act (FLSA) permits employees to bring their FLSA claims through a collective action on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). Employees wishing to participate in the collective action must opt in by filing written consent with the court. Id. Plaintiff Auston Knight filed this proposed collective action against Defendant Dakota 2000 Inc. (Dakota 2000), alleging that Dakota 2000 violated the FLSA by failing to pay overtime wages to him and other similarly situated employees. Doc. 1. Knight now moves for an order conditionally certifying this proposed collective action and directing that notice of the action be sent to potential plaintiffs so that they can decide whether to participate. This Court grants Knight's motion to conditionally certify a collective action but will have a hearing to determine whether to define the action as broadly as Knight requests and to address certain issues with the proposed notice and reminder.

I.      Facts

1

Dakota 2000 is a construction company specializing in structured cabling, general contracting, and oilfield work. Doc. 17-1 at ¶ 2. Knight worked as a production flow-back supervisor at Dakota 2000's gas and oil worksites in North Dakota from approximately August 2018 to September 2019. Doc. 17-1 at ¶¶ 1, 3. His main job duties involved performing manual labor on the oil and gas operations at Dakota 2000's worksites. Doc. 17-1 at ¶ 3. Among other things, Knight managed the worksites, fixed various mechanical issues on valves, separators, and storage tanks, and completed reports. Doc. 17-1 at ¶ 3. According to Knight, he often worked more than 40 hours per week on a rotational schedule known as a "hitch." Doc. 17-1 at ¶ 7. Knight claims he would work 12-hour days under the hitch schedule for anywhere from 60 to 70 days straight, followed by several days off. Doc. 17-1 at ¶ 7. Despite these long hours, Knight claims that Dakota 2000 paid him only a "day rate"[1] with no increase for overtime. Doc. 17-1 at ¶¶ 5, 8. Knight alleges that other Dakota 2000 employees with whom he worked on the worksites also frequently worked more than 40 hours a week and that they too received only a day rate without overtime pay. Doc. 17-1 at ¶ 9.

Knight filed this FLSA action in late 2021. Doc. 1. He claims that Dakota 2000 violated the FLSA by failing to pay him and other day-rate employees overtime. The FLSA generally requires employers to pay their employees no less than one and one-half times their regular rate of pay for any hours worked over 40 in a week. 29 U.S.C. § 207(a)(1). The Act exempts several

---

[1] Knight's complaint and affidavit do not define "day rate," but his briefing suggests that he means he was paid the same rate regardless of whether he worked overtime hours. Doc. 17 at 2. This is consistent with how courts in FLSA actions have used "day rate." See Lee v. Vance Exec. Prot., Inc., 7 F. App'x 160, 165 (4th Cir. 2001) (per curiam) (finding that employees who were "paid a flat sum for a day's work without regard to the number of hours worked in the day" were paid on a day-rate basis (cleaned up and citation omitted)); Dufrene v. Browning-Ferris, Inc., 207 F.3d 264, 266 (5th Cir. 2000) (describing day-rate employees as those who were "guaranteed a day's pay, regardless of the number of hours worked that day"). Dakota 2000 admits in its answer that it paid Knight "on a salary or a daily rate basis and not hourly." Doc. 10 at ¶ 13.

types of employees from this overtime requirement, however, including those in specific industries, see, e.g., 29 U.S.C. § 213(a)(3), (5), (6), (17), (b), and those "employed in a bona fide executive, administrative, or professional capacity," Id. § 213(a)(1). According to Knight, neither he nor the potential collective action plaintiffs are exempt from the FLSA's overtime requirement. Doc. 1 at ¶¶ 13, 21.

In early 2022, Plaintiff Rodney Smith consented to join this case. Docs. 14, 14-1. Smith worked as an oil and gas production flow watch at Dakota 2000's worksites in North Dakota from approximately June 2018 to September 2019. Doc. 17-2 at ¶¶ 1, 3. He claims that his main job duties involved maintaining Dakota 2000's oilfield facilities and performing manual labor on the oil and gas operations at its worksites. Doc. 17-2 at ¶ 3. Smith says that he watched the oil and gas pressure levels, maintained the valves and separators, and would restart the wells if pumping operations were inoperative. Doc. 17-2 at ¶ 3. Like Knight, Smith alleges that he often worked more than 40 hours per week on the hitch schedule, that Dakota 2000 nevertheless paid him only a day rate with no increase for overtime, and that Dakota 2000 subjected his coworkers to this same policy. Doc. 17-2 at ¶¶ 5–9.

Knight now moves for conditional certification, asking this Court to certify the following collective action:

> All current and former non-exempt manual laborer employees of Defendant who were paid on a day rate basis without receiving overtime premium pay for all hours worked over forty in a workweek at any time within the three years prior to the date of the entry of an order from the Court granting Plaintiff's motion to the present.

Doc. 16 at 2. Knight and Smith submitted affidavits in support of the motion and a "class list" Dakota 2000 apparently produced in discovery. Docs. 17-1, 17-2, 17-5. That document identifies 81 Dakota 2000 employees, including Knight and Smith. Doc. 17-5. It lists the "class" of these

3

employees as "flowback" and provides the rate of pay and "daily rate total" for each employee from July 1, 2018, to September 1, 2019. Doc. 17-5. Knight also asks this Court to direct that notice of the collective action be sent to potential plaintiffs and that Dakota 2000 produce the names and contact information for these plaintiffs. Dakota 2000 objects to any conditional certification of the proposed collective action. Doc. 18.

## II.   Analysis

### A.   Test Applied to Potential FLSA Collective Actions

Section 216(b) of the FLSA authorizes employees to bring collective actions to recover unpaid overtime. 29 U.S.C. § 216(b). The Supreme Court has interpreted § 216(b) as giving district courts the "authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). This authority includes court supervision of the notice being sent to potential plaintiffs. Id. at 169–74. But neither Supreme Court decisions nor § 216(b) itself provide much guidance on when a collective action is appropriate and how such an action should proceed. Section 216(b) sets only two requirements for a collective action: the plaintiffs must be "similarly situated" and must opt in to the action by filing written consent with the court.[2]  29 U.S.C. § 216(b). The statute

---

[2]The relevant portion of § 216(b) reads as follows:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

does not define "similarly situated," discuss giving notice to potential plaintiffs, or mention the certification of collective actions.³ Id.

This lack of direction in § 216(b) has led courts to create their own procedures for handling FLSA collective actions. See Swales v. KLLM Transp. Servs., LLC, 985 F.3d 430, 436 (5th Cir. 2021). The most popular of these is a two-step procedure sometimes called the "'Lusardi approach.'" 7 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 23:37 (6th ed.); see Swales, 985 F.3d at 436. The first step of the Lusardi approach involves an initial review of whether a collective action is appropriate such that notice should be sent to potential plaintiffs. Myers v. Hertz, 624 F.3d 537, 555 (2d Cir. 2010); Frazier v. PJ Iowa, LC, 337 F. Supp. 3d 848, 861 (S.D. Iowa 2018). District courts will conditionally certify a collective action under this first step if the plaintiffs make a "modest factual showing" that they are similarly situated to the potential plaintiffs. Haworth v. New Prime, Inc., 448 F. Supp. 3d 1060, 1066 (W.D. Mo. 2020) (citation omitted); Myers, 624 F.3d at 555 (citation omitted). Courts will then authorize notice of the collective action to the potential plaintiffs and may order discovery of the names and contact information of these potential plaintiffs to facilitate the notice process. Haworth, 448 F. Supp. 3d at 1066; Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 224–25 (3d Cir. 2016). Unlike certification of a class action under Federal Rule of Civil Procedure 23, the conditional certification of an FLSA collective action "does not produce a class with an independent legal status, or join additional parties to the action." Genesis Healthcare Corp. v. Symczyk, 569 U.S.

---

29 U.S.C. § 216(b).
³This is in stark contrast to Rule 23 of the Federal Rules of Civil Procedure, which provides detailed guidance on when a class action is appropriate and how notice and certification of the class should occur. See Fed. R. Civ. P. 23.

66, 75 (2013). Rather, the "sole consequence of conditional certification is the sending of court-approved written notice to employees." Id.

The second step of the Lusardi approach "occurs after notice, time for opting-in, and discovery have taken place." Frazier, 337 F. Supp. 3d at 862 (citation omitted). This step—usually triggered by a defendant's motion to decertify—requires district courts to review the similarly-situated question under a "stricter standard" and determine whether the plaintiffs are, in fact, similarly situated. Id. (citation omitted).

Not everyone agrees on the Lusardi approach. The Fifth Circuit has rejected Lusardi, holding that district courts must "rigorously scrutinize" § 216(b)'s similarly-situated requirement at the beginning of the case, before notice is sent to any potential plaintiffs. Swales, 985 F.3d at 434. Other appellate courts have endorsed some version of the Lusardi approach, however, including the Second and Eleventh Circuits. Scott v. Chipotle Mexican Grill, Inc. 954 F.3d 502, 515 (2d. Cir. 2020); Mickles v. Country Club Inc., 887 F.3d 1270, 1276–77 (11th Cir. 2018); see also Campbell v. City of Los Angeles, 903 F.3d 1090, 1110 (9th Cir. 2018) (stating that there was "good reason" that the two-step approach "has been endorsed by every circuit" to consider it). And while the Eighth Circuit has never adopted the Lusardi approach, the majority of district courts within this Circuit have. Cope v. Let's Eat Out, Inc., 354 F. Supp. 3d 976, 981 (W.D. Mo. 2019) (explaining that the majority of district courts within the Eighth Circuit "use a two-step analysis"); see also McCoy v. Elkhart Prods. Corp., No. 5:20-CV-05176, 2021 WL 510626, at *2 (W.D. Ark. Feb. 11, 2021) (applying the "historical, two-stage approach," instead of the Fifth Circuit's decision in Swales). This Court will apply the Lusardi approach here as neither party argues for a different approach, the Lusardi approach makes sense, and most federal courts use it.

**B.     First Step: Conditional Certification**

The first step requires plaintiffs to make only a modest factual showing "that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Myers, 624 F.3d at 555 (cleaned up and citation omitted). This lenient standard typically results in the district court conditionally certifying a collective action.[4] Haworth, 448 F. Supp. 3d at 1066; Chin v. Tile Shop, LLC, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014). But conditional certification is not guaranteed; plaintiffs must present at least "some evidence" to support their allegations of being similarly situated and, according to certain courts, must show that other employees desire to opt-in to the collective action.[5] Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 892 (N.D. Iowa. 2008) (citation omitted); see also Myers, 624 F.3d at 555 (explaining that "unsupported assertions" are insufficient at the first stage (citation omitted)).

Knight argues that he is similarly situated to Smith and the potential plaintiffs because they are all victims of Dakota 2000's policy or practice of failing to pay its day-rate employees overtime when they work over forty hours in a workweek. He claims that this practice is a per se violation of the FLSA, that Dakota 2000 therefore violated the FLSA rights of every putative plaintiff regardless of their job, and that liability can be determined collectively without limiting the class to a particular job position. Doc. 19 at 5.

---

[4]Some district courts apply a higher standard of proof at this first stage when the plaintiffs have had time to engage in discovery. See Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 823–26 (N.D. Ohio 2011). Knight has conducted some preliminary collective action discovery here, Doc. 13 at 2, but Dakota 2000 does not argue that he must meet a higher standard of proof. Such an argument would not have been successful in any event. See Chin, 57 F. Supp. 3d at 1082 n.3 ("Even in cases where the parties have engaged in some discovery, plaintiffs must show only a colorable basis to achieve conditional certification under the first stage of review." (citation omitted)); Kautsch v. Premier Commc'ns, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007) (applying lenient standard where discovery had begun but was not "substantially completed").

[5]"[D]istrict courts within the Eighth Circuit differ as to whether and by what means a plaintiff must demonstrate interest in the proposed collective action." Chin, 57 F. Supp. 3d at 1090.

Knight has made the modest factual showing necessary for conditional certification. The affidavits from him and Smith show that Dakota 2000 paid its flow-back employees performing manual labor on its worksites in North Dakota a day rate with no increase despite those employees frequently working more than 40 hours a week. Doc. 17-1 at ¶¶ 3, 5–9; Doc. 17-2 at ¶¶ 3, 5–9. The class list Knight submitted identifying 81 flow-back employees and their pay rate is further evidence that Dakota 2000 had a practice of refusing to pay its day-rate flow-back employees overtime. Dakota 2000 does not appear to dispute that it paid Knight, Smith, and the other "flowback" employees identified in the class list a flat day rate regardless of the number of hours they worked. See Doc. 18. Knight's evidence is enough, at this lenient first step, to show that he and Dakota 2000's other flow-back employees were subject to a common plan or practice. See Ianotti v. Wood Grp. Mustang, No. 20-cv-958, 2022 WL 1605855, at *4 (S.D. Ill. May 20, 2022) (conditionally certifying a class based on affidavits showing that defendant's employees were all paid a day rate regardless of the hours they worked despite normally working more than 40 hours a week); West v. Bullrock, LLC, No. 1:19-CV-00214, 2021 WL 2668828, at *2 (D.N.D. May 4, 2021) (granting conditional certification where two plaintiffs submitted affidavits saying they had similar job duties and that the defendant subjected them and others who performed their jobs to the same practice of paying them a salary instead of proper overtime); Schleipfer v. Mitek Corp., No. 1:06CV109, 2007 WL 2485007, at *2–3 (E.D. Mo. Aug. 29, 2007) (conditionally certifying a case based on an affidavit from the plaintiff saying that he and the putative plaintiffs performed the same type of work and were all denied overtime regardless of the hours they worked).

Knight also has made a sufficient showing that other similarly situated employees want to opt in to the collective action; Smith has already opted in, Doc. 14-1, and it is reasonable to assume that at least some of the other flow-back employees identified in the affidavits and class list would

desire to join this lawsuit. See Cummings v. Bost, Inc., No. 2:14-CV-02090, 2015 WL 13655466, at *3 (W.D. Ark. Apr. 13, 2015) (finding that declaration by a single plaintiff that defendant subjected she and others with the same job title to the same FLSA violation was enough to show interest by potential class members).

Dakota 2000 makes three arguments against conditional certification, none of which are persuasive. Doc. 18 at 4–5. It argues first that conditional certification is inappropriate because it disputes that Knight is exempt from the FLSA's overtime requirement. Dakota 2000 reasons that if Knight is exempt, then so too are all those employees similarly situated to him, making it unnecessary "to bring them into this lawsuit." Doc. 18 at 4. But courts do not resolve exemption defenses at the first step of the Lusardi approach, Trogdon v. Kleenco Maint. & Const., Inc., No. 5:14-CV-05057, 2015 WL 2345590, at *3 (W.D. Ark. May 15, 2015) (declining to address defendant's argument at the conditional certification stage that some plaintiffs were exempt under the FLSA); Chin, 57 F. Supp. 3d at 1085 ("[C]ourts in the Eighth Circuit have consistently held that merits based inquires, including whether an FLSA exemption applies, are appropriate for the second, decertification stage of FLSA actions."), and the presence of a common exemption defense is not alone a reason for denying conditional certification, Kautsch, 504 F. Supp. 2d at 690 n.2. In any event, Dakota 2000 does not specify which exemption applies to Knight or offer any evidence to support this claim.

Dakota 2000 next argues that Smith's job title and duties show that he is not similarly situated to Knight. It claims that while Smith "may also be an exempt employee based on his specific job duties and responsibilities," he did not manage workers and worksites like Knight. Doc. 18 at 5. Yet Knight's job title and duties need not be identical to Smith's for conditional certification. See Young v. Cerner Corp., 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007). And

9

while Smith doesn't manage the worksites, he and Knight have several things in common: they both worked on Dakota 2000's sites in North Dakota as flow-back employees, both performed manual labor on the oil and gas operations at these sites, and, most importantly, both frequently worked more than 40 hours a week without Dakota 2000 paying them any overtime. Doc. 17-1 at ¶¶ 3–9; Doc. 17-2 at ¶¶ 3–9. It is true, of course, that differences in job duties can raise concerns about the judicial efficiency of a collective action, particularly when the differences prompt an exemption defense for some plaintiffs but not others. See Chen Chung Liang v. J.C. Broadway Rest., Inc., No. 12 Civ. 1054, 2013 WL 2284882, at *2 (S.D.N.Y. May 23, 2013); Thrower v. UniversalPegasus, Int'l, 484 F. Supp. 3d 473, 485 (S.D. Tex. 2020); Smart v. City of Hughes, No. 2:19-cv-00047, 2020 WL 3451656, at *3 (E.D. Ark. June 24, 2020). But courts typically wait until the decertification stage to consider arguments that dissimilarities make a collective action inappropriate. See Jones v. Cretic Energy Servs., LLC, 149 F. Supp. 3d 761, 774 (S.D. Tex. 2015); Knaak v. Armour-Eckrich Meats, LLC, 991 F. Supp. 2d 1052, 1060 (D. Minn. 2014); Loomis v. CUSA LLC, 257 F.R.D. 674, 678 (D. Minn. 2009); Jirak v. Abbot Lab'ys, Inc., 566 F. Supp. 2d 845, 850 (N.D. Ill. 2008). And even if this Court were to consider the differences in Knight's and Smith's job duties, Dakota 2000 has not explained how these differences would undermine judicial efficiency or how they are relevant to the claim that it failed to pay its day-rate employees overtime as required by the FLSA.

Dakota 2000's last argument fails for similar reasons. It contends that the class list does not show that the named employees are similarly situated to Knight because while the list identifies every employee's class as "flowback," it does not "distinguish between production flow back supervisor, production flow watch, or any other position with a similar classification." Doc. 18 at 5 (footnote omitted). As explained above, though, Knight's evidence is enough at this stage to

10

show that he and the other day-rate flow-back employees are similarly situated because they were all subject to Dakota 2000's practice of refusing to pay them overtime. Dakota 2000 does not explain why the different job titles and duties of flow-back employees are legally relevant, and just pointing out potential differences in a proposed class is not enough to defeat a motion for conditional certification. Helmert v. Butterball, LLC, No. 4:08CV00342, 2009 WL 5066759, at *4 (E.D. Ark. Dec. 15, 2009); Chowdhury v. Duane Reade, Inc., No. 06 Civ. 2295, 2007 WL 2873929, at *5 (S.D.N.Y. Oct. 2, 2007). Dakota 2000 may ultimately be able to show that Knight and the other putative collective action members are not similarly situated; that will have to await a motion to decertify, however, when Dakota 2000 should offer evidence to support its arguments and explain why the differences between members matter.

### C. Questions on Scope of Collective Action

Courts have discretion to narrow the scope of a proposed collective action when it's too broad. Heitzman v. Calvert's Express Auto Serv. & Tire, No. 22-CV-2001, 2022 WL 5241927, at *5 (D. Kan. Oct. 6, 2022); Hanming Feng v. Soy Sauce LLC, 15 CV 3058, 2016 WL 1070813, at *4–5 (E.D.N.Y. Mar. 14, 2016); Walter v. Buffets Inc., No. 6:13-cv-02995-JM, 2015 WL 3903382, at *6 (D.S.C. June 25, 2015). In Heitzman, for instance, the plaintiff sought to certify a class of "All Current and Former Employees Who Were Paid a Day Rate" while working for the defendant. 2022 WL 5241297, at *4. The plaintiff alleged that the defendant had a company-wide policy of failing to pay its day-rate employees appropriate overtime but only offered evidence concerning the defendant's shop managers and district managers. Id. at *5. The district court limited the class to these two positions because the plaintiff had failed to show that the policy applied to the defendant's other employees. Id. The court in Hanming Feng reached a similar conclusion, declining to certify a class of hourly-paid employees who worked overtime without

receiving appropriate compensation. 2016 WL 1070813, at *4–5. The court instead limited the class to those employees to which the plaintiff had shown that the alleged illegal policy applied. Id. at *5.

This Court wants to hear from the parties on whether Knight's proposed collective action is too broad. He wants the collective action to encompass "[a]ll current and former non-exempt manual laborer employees of Defendant who were paid on a day rate basis without receiving overtime premium pay for all hours worked over forty in a workweek." Doc. 16 at 2. Knight's evidence, however, focuses on Dakota 2000's flow-back employees. See Docs. 17-1; 17-2; 17-5. Meanwhile, his proposed notice is directed to "oilfield worker[s] . . . paid a day rate." Doc. 17-3. In short, this Court wants to hear from the parties on what distinctions among Dakota 2000 employees exist for flow-back, oilfield, and manual labor employees.

### D. Questions on Notice and Production of List of Employees

This Court has a duty to ensure that the notice sent to potential opt-in plaintiffs is "timely, accurate, and informative." Sperling, 493 U.S. at 172. Courts supervising the notice-giving process must "respect judicial neutrality" and "avoid even the appearance of" endorsing "the merits of the action." Id. at 174. Knight submitted a proposed notice, Doc. 17-3, and a proposed consent to join form, Doc. 17-4, he wants sent to the potential plaintiffs. He asks that notice be given via U.S. mail, email, and text message; that he be allowed to provide a prepaid self-addressed envelope bearing the phrase "Notice of Unpaid Overtime Lawsuit—Deadline to Join"; that Dakota 2000 post the notice in common areas or on employee bulletin boards at its facilities; that this Court allow a 90-day opt-in period; and that he be permitted to send a postcard, email, and text reminder to potential plaintiffs who have not returned executed notices of consent 45 days before the deadline to join.

Dakota 2000 does not object to—or even address—the proposed notice or Knight's other requests. Knight's proposed notice seems timely and informative. Knight will have to fill in the "[DATE]" blanks in the proposed notice with a date three years before the date on this Order. There is a three-year statute of limitations for willful violations of the FLSA like the one Knight alleges here, 29 U.S.C. 255(a), and a cause of action for a member of a collective action commences when that person files a written consent with the court, 29 U.S.C. § 256. "Many courts around the country require the provision of notice only to persons employed by the defendant within three years of the notice or of the court order approving such notice." Hussein v. Cap. Bldg. Servs. Grp., 152 F. Supp. 3d 1182, 1195–96 (D. Minn. 2015). Knight may have to alter the proposed notice depending on how this Court rules after hearing from the parties.

This Court has no issue with the proposed consent form, the methods of notice Knight requests, and his requests for the prepaid envelope, to have Dakota 2000 post the notice, a 90-day opt-in period, and the sending of a reminder. Knight did not submit a proposed reminder, however, and should do so before the hearing.

Knight also asks this Court to require Dakota 2000 to produce a list of potential opt-in plaintiffs in a "usable electronic format" within seven days of this order. Doc. 17 at 10. He seeks the full names, last known addresses, last known residential and cell phone numbers, email addresses, last four digits of social security numbers, dates of birth, and dates of employment of all persons who worked for Dakota 2000 as day-rate paid employees at any time three years before this order. Knight clarifies in a footnote that he is only requesting social security numbers for plaintiffs with undeliverable mail so that a skip trace can be performed to locate them. Doc. 17 at 10 n. 5. Dakota 2000 did not address these requests. This Court is disinclined to require Dakota 2000 to produce the social security numbers of the potential opt-in plaintiffs. If Knight has trouble

reaching certain potential opt-in plaintiffs, he may file a motion identifying these individuals, explaining why he has been unable to effectuate notice, and requesting additional information. See Lyons v. Ameriprise Fin., Inc., Civ. No. 10-503, 2010 WL 3733565, at *6 n.8 (D. Minn. Sept. 20, 2010) (declining to order production of social security numbers but allowing the plaintiff to renew her request for additional information about potential opt-in plaintiffs should it become necessary).

### III.   Conclusion

For the reasons stated above, it is hereby

ORDERED that Knight's Motion to Conditionally Certify an FLSA Collective Action and to Issue Notice, Doc. 16, is granted in part pending a hearing. It is further

ORDERED that the parties cooperate to schedule a hearing to address the pending issues identified in this Opinion and Order with the Court proposing a hearing date of Tuesday, November 22, 2022.

DATED this 28th day of October, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE